**Vera MEYER et al., Plaintiffs,**

**v.**

**NILES TOWNSHIP, ILLINOIS, et al., Defendants.**

**No. 78 C 4744.**

United States District Court, N. D. Illinois, E. D.

July 24, 1979.

---

Cook County Legal Assistance Foundation, Inc. by Barry A. Rose and Henry G. Rose, Evanston, Ill., for plaintiffs.

Bernard Carey, State's Atty., Chicago, Ill., for defendant Dunne.

Emanuel Cannonito, Blue Island, Ill., for defendant Jesk.

Goldenson, Kiesler, Berman & Brenner, Chicago, Ill., for defendant Follett.

Milton A. Svec & Assoc., Berwyn, Ill., for defendant Glaser.

Schuyler, Ballard & Cowen, Chicago, Ill., for defendant Kolerus.

## OPINION

BUA, District Judge.

This is a civil rights action brought under 42 U.S.C. § 1983 challenging a denial of assistance under the Aid to Medically Indigent Program, ("AMI"), authorized by the Illinois Public Aid Code, Ill.Rev.Stat. ch. 23, § 7–1 et seq. (1977). AMI provides assistance to any person or family whose income is sufficient to maintain basic maintenance requirements, but whose resources are not sufficient to meet the costs of medical care. The original decision to grant or deny benefits is made by the applicant's township. Upon denial, the applicant may appeal the decision to the Public Aid Committee. Ill. Rev.Stat. ch. 23, § 11–8 (1977).

The plaintiff, Vera Meyer, was denied AMI assistance by Niles Township. She alleges that the denial of assistance was in violation of her constitutional right to due process and equal protection of the law. She seeks monetary damages and injunctive and declaratory relief. In addition to Niles Township and its supervisor, Edward Warman, other defendants include the Illinois Department of Public Aid and its director, Arthur Quern, who have general authority over the AMI program, George Dunne, President of the Cook County Board of Commissioners, who appointed the defendant township supervisors to the Public Aid Committee, and the members of the Committee [1] who made the final decision to deny assistance. Before the court are Dunne's motion to dismiss and the motions of Public Aid Committee members, Kolerus, Follett, Jesk, and Glaser, to dismiss the claim for monetary relief.[2]

The complaint alleges that on October 5, 1977, the plaintiff was admitted to Skokie Valley Hospital for treatment of an injury sustained as a result of a criminal attack on her person.[3] The plaintiff informed a hos-

---

1. At the time of the alleged violation of plaintiff's constitutional rights, there were five township supervisors serving on the Public Aid Committee: Ethel Kolerus, Nancy Follett, James Jesk, George Glaser, and Edward Warman.

2. Warman has not made a motion to dismiss as of this time.

3. Plaintiff has received compensation for her injuries under the Criminal Victim Compensation Act. Ill.Rev.Stat. ch. 70, § 71 et seq. (1977). Plaintiff's First Amended Complaint, at 17. She has, however, signed a subrogation agreement as required by the Act. The case is therefore not moot.

pital staff person of her inability to meet the costs of medical care and lack of insurance coverage. On October 7, a social worker, employed by the hospital, gave the plaintiff an application for medical assistance. Due to the confines of traction and influence of heavy medication, plaintiff was not able to complete the application until October 9. The County Department of Public Aid received the application on October 14. IDPA, after denying assistance under a medical assistance program other than AMI, forwarded plaintiff's application on December 14, 1977 to Niles Township for determination of eligibility for AMI benefits.

Plaintiff received a letter from Niles Township informing her that her application was not considered because it was not received within the five-day period of hospitalization as required by Niles Township and the state General Assistance Manual.[4] On advice of counsel, Cook County Legal Assistance Foundation, plaintiff appealed to the Public Aid Committee. At the hearing, plaintiff offered evidence indicating her need for assistance, as well as her lack of fault in her failure to comply with the five-day rule. Plaintiff received notice approximately thirty days later of the Committee's decision to uphold Niles Township's action in denying AMI benefits because the application was not received by the township within the five-day period.

Plaintiff, individually and on behalf of all other eligible persons in Cook County who have been denied assistance under AMI,[5] seeks a declaratory judgment that defendants' treatment of plaintiff was in violation of plaintiff's constitutional rights to due process and equal protection of the law. In addition, the plaintiff seeks compensatory and punitive damages for injuries she has suffered as a result of defendants' actions.

She claims that because of the Committee members' concurrent positions as township supervisors, they cannot make an impartial decision on AMI appeals. Plaintiff and the class she represents also seeks injunctive relief against the defendants' continued administration of the AMI program.

### I. George Dunne's Motion to Dismiss

George Dunne has filed a motion to dismiss for failure to state a cause of action against him. Dunne argues that plaintiff's complaint does not allege that Dunne personally participated in the AMI program and as such, he cannot be held liable under *Rizzo v. Goode,* 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976).

Plaintiff, in opposing Dunne's motion, claims that (1) the facts justify imposition of vicarious liability upon Dunne for his negligent failure to supervise members of the Public Aid Committee, and (2) even if the court finds that the allegations in plaintiff's complaint do not support the proposition that Dunne is vicariously liable for the actions of the Committee, his appointment of township supervisors to the Committee is unconstitutional.

### A. Negligent Supervision.

 Mere negligent supervision is insufficient to state a cause of action under 42 U.S.C. § 1983. As this court stated in *Stringer v. City of Chicago,* 464 F.Supp. 887, 891 (N.D.Ill.1979): "[i]n order to establish the liability under § 1983 of supervisory officials for deprivation of constitutional rights through the acts of their subordinates, an affirmative link must be proven between their own acts or omissions and the actions directly causing the alleged violation." *See Rizzo v. Goode,* 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976); *Jamison v. McCurrie,* 565 F.2d 483 (7th Cir. 1977); *see*

---

**4.** Illinois General Assistance Manual P.O. 315.2 (Aug. 1, 1976). It provides:

Applications for Aid to the Medically Indigent for hospitalized applicants must be received in the local office not more than five (5) calendar days after the date of admission to the hospital, excluding the date of admission, unless delay in receipt of the form occurred through no fault of the individual applying.

**5.** Plaintiff has not yet moved for certification of the class.

*also Monell v. New York City Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Negligent supervision by the defendant over those directly causing the constitutional deprivation does not supply the requisite link. *See McDonald v. State of Illinois,* 557 F.2d 596 (7th Cir. 1977), *cert. denied,* 434 U.S. 872, 98 S.Ct. 508, 54 L.Ed.2d 453 (1977).

The complaint does not clearly state whether plaintiff seeks to charge Dunne with negligence in his supervision of the Public Aid Committee or with a more culpable mental state such as recklessness. The distinction in this case is of no significance, however. Dunne, as President of the Cook County Board of Commissioners, does not have supervisory authority over the AMI program. To the contrary, the Illinois Department of Public Aid administers and supervises the AMI program,[6] pursuant to Ill.Rev.Stat. ch. 23, § 12–21.17 (1977). IDPA promulgates rules and regulations governing the administration of the AMI program and has the authority to audit the books and records of the local AMI programs. Ill.Rev.Stat. ch. 23, § 12–21.17 (1977). Thus, plaintiff's claim against Dunne based on negligent or otherwise improper supervision cannot stand.

B. *Appointment of Township Supervisors to the Public Aid Committee.*

Plaintiff also argues that the Public Aid Committee, as appointed by defendant George Dunne, is unconstitutionally constituted. Plaintiff alleges that the members of the Committee, because of their concurrent positions as township supervisors, cannot reach impartial decisions. Plaintiff, in her reply brief, appears to argue that Dunne's appointment of the members of the Committee is sufficient personal participation to hold Dunne liable for any resulting constitutional deprivation by that Committee.

The crux of plaintiff's argument is that township supervisors serving on the Public Aid Committee are necessarily biased against AMI applicants by virtue of their substantial pecuniary interest as supervisors. The supervisors' overriding interest in protecting township funds, she claims, prevents them from reaching an unbiased, disinterested decision on AMI appeals. As discussed below, that contention is not without merit. To hold Dunne personally liable, however, the court must first determine (1) whether plaintiff has an interest in her AMI appeal sufficient to invoke procedural due process protection, (2) whether the structure of the Public Aid Committee is a violation of plaintiff's due process right to have her AMI appeal decided by an impartial administrative panel, and (3) if the Committee is improperly structured, whether Dunne is protected in his appointment of the Committee by some form of official immunity.

1. *The Plaintiff Was Entitled to Procedural Due Process Protection.*

■ Before determining whether any procedural due process rights were violated, the court must determine whether plaintiff had any protected due process interest in her AMI appeal before the Public Aid Committee. *See, e. g., Barry v. Barchi,* —— U.S. ——, —— and n. 11, 99 S.Ct. 2642, 61 L.Ed.2d 365, (1979); *Board of Regents v. Roth,* 408 U.S. 564, 570, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). In order to do so, it must be found that plaintiff has a property interest in AMI benefits sufficient to warrant the application of federal due process protection.

The Supreme Court's decision in *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), is particularly applicable here. The Court in *Mathews* found that the "interest of an individual in continued receipt of [disability insurance] benefits is a statutorily created 'property' interest protected by the Fifth Amendment." *Mathews,* at 332, 96 S.Ct. at 901. *See Goldberg v. Kelly,* 397 U.S. 254, 261–62, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970).

---

**6.** Plaintiff, in fact, acknowledges IDPA's supervisory authority over the AMI program. Plaintiff's First Amended Complaint, at 23; Plaintiff's Brief in Opposition to Defendant's Dunne's Motion to Dismiss, at 1–2.

Although this case differs from *Mathews* in that *Mathews* addressed itself to hearings terminating assistance after the initial eligibility determination had been made, due process protection can apply to a hearing determining initial eligibility for benefits. This proposition is supported by the Seventh Circuit decision in *Wright v. Califano,* 587 F.2d 345 (1978). The court of appeals there presumed the application of procedural due process to an administrative determination of ineligibility for Social Security benefits. The court found that unsuccessful applicants have a "statutory right to seek a reversal of those decisions." *Wright, supra,* at 351. *See* 42 U.S.C. § 405(b) (1975).

The plaintiff here has a statutorily created right to a fair hearing to determine her eligibility for AMI benefits. Ill.Rev.Stat. ch. 23, § 11–8 (1977). The Illinois statute also provides that the hearing shall be conducted in a manner "as seems best calculated to conform to substantial justice and the spirit of the Code." Ill.Rev.Stat. ch. 23, § 11–8.4 (1977). Thus, plaintiff has a sufficient property interest in her AMI appeal to warrant the application of due process.

2. *The Structure of the Public Aid Committee Violates the Plaintiff's Right to Due Process.*

 The plaintiff has a constitutional right to have her AMI appeal decided by an unbiased, disinterested, administrative panel. A biased decisionmaker is constitutionally unacceptable. *Withrow v. Larkin,* 421 U.S. 35, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975). This principle applies to administrative agencies which perform adjudicatory functions, as well as to courts. *Gibson v. Berryhill,* 411 U.S. 564, 579, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973). *See Withrow,* 421 U.S. at 46, 95 S.Ct. 1456; *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972) (parole board should be unbiased).

An adjudicator with a pecuniary interest in a case is a violation of this principle. Thus, officers acting in a judicial or quasi-judicial capacity must be disqualified as biased if they have a pecuniary interest in the case. *Tumey v. Ohio,* 273 U.S. 510, 522, 47 S.Ct. 437, 71 L.Ed. 749 (1927) (a small part of the judge's income consisted of court fees collected from convicted defendants). *See Connally v. Georgia,* 429 U.S. 245, 97 S.Ct. 546, 50 L.Ed. 444 (1977) (judge's issuance of search warrants, pursuant to a state statute whereby the judge received some compensation based upon the number of warrants issued, held to violate due process because of the judge's pecuniary interest). This principle of disqualification applies even if the pecuniary interest is only an indirect outgrowth of a public official's desire to protect official funds. *Ward v. Village of Monroeville,* 409 U.S. 57, 93 S.Ct. 80, 34 L.Ed.2d 267 (1972) (trial for traffic offenses before a mayor who is responsible for village finances and whose courts generated a substantial portion of village funds through fines, costs and fees is constitutionally impermissible).

In the instant case, a panel of township supervisors has the sole discretion to determine if an applicant is entitled to AMI benefits, payment of which is derived from the funds of the township in which the applicant resides. The Public Aid Committee members occupy seriously inconsistent positions. As supervisors, the members of the Committee have an interest in protecting township funds. Inevitably, that interest may affect their determination of AMI appeals.[7] The court concludes that the structure of the Public Aid Committee is a violation of plaintiff's right to due process of law, since she could not be provided a fair hearing before an unbiased decisionmaker.

3. *Dunne Is Not Protected by the Doctrine of Qualified Immunity.*

 The court also agrees that the plaintiff's complaint contains sufficient al-

___

7. *See, e. g.,* Committee member Jesk's statement, "Do you realize what the townships are going to run into with all these hospital bills and we become the collection agency for them?

We'd need budgets of 5 million dollars to operate a township. Every accident, every motorcycle case, every drug addict, every alcoholic . . . ."

legations to hold defendant Dunne personally liable for any damages because he appointed the members of the Public Aid Committee. Dunne has not demonstrated that his appointment of the members of the Committee must be protected by the doctrine of qualified immunity.

Federal and state executive officials who exercise discretion in the performance of their duties are entitled to a qualified immunity. The doctrine of qualified immunity requires that the officer show he acted on a good faith belief that his actions were lawful and that reasonable grounds for the belief existed at the time of his actions. *Scheuer v. Rhodes,* 416 U.S. 232, 247, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). *See Butz v. Economou,* 438 U.S. 478, 498, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978); *Maiorana v. MacDonald,* 596 F.2d 1072 (1st Cir. 1979); *Hampton v. Hanrahan,* 600 F.2d 600 (7th Cir. 1979). Although the Court in *Butz* recognized the need to protect executive officials who are required to exercise discretion and the "public interest in encouraging vigorous exercise of official authority," it held that a Court could hold an official liable who "knows or should know he is acting outside the law, and that insisting on an awareness of clearly established constitutional limits will not unduly interfere with the exercise of official judgment." *Butz, supra,* 438 U.S. at 506–07, 98 S.Ct. at 2911.

To rebut the qualified immunity defense, the plaintiff must demonstrate that the constitutional right infringed was clearly established at the time of the action and the official "knew or reasonably should have known that the action he took within the sphere of official responsibility" would infringe upon that right. *Wood v. Strickland,* 420 U.S. 308, 322, 95 S.Ct. 1589, 43 L.Ed.2d 214 (1975); *Procunier v. Navarette,* 434 U.S. 555, 562, 98 S.Ct. 855, 55 L.Ed.2d 24 (1978); *see Tritsis v. Backer,* 501 F.2d 1021, 1022–23 (7th Cir. 1974). *See also Rasmussen v. City of Lake Forest,* 404 F.Supp. 148

(N.D.Ill.1975) (damage claims against members of city council dismissed because of the unsettled nature of law which plaintiff sought to apply); *Collins v. Bensinger,* 374 F.Supp. 273 (N.D.Ill.1975), *cert. denied,* 422 U.S. 1058, 95 S.Ct. 2683, 45 L.Ed.2d 710 (1975) (damage claims against administrative officials of state correctional system dismissed because plaintiff's "right to treatment" was not established in jurisdiction at time of alleged conduct).

Dunne has not demonstrated that he is entitled as a matter of law to the protection of the qualified immunity defense. The plaintiff's due process right to a fair and impartial hearing was clearly established at the time of Dunne's appointment of the Public Aid Committee. Ill.Rev.Stat. ch. 23, § 11–8 (1977). The court holds that the plaintiff has sufficiently alleged that Dunne should have known that the appointment of township supervisors to the Committee would inevitably infringe upon plaintiff's due process rights.[8]

Dunne cannot claim freedom from liability because he was mandated by a state statute to appoint township supervisors to the Public Aid Committee. Ill.Rev.Stat. ch. 23 § 11–8(2) (1977). An official is not free from liability because he is acting pursuant to a statute if he reasonably should have known that the statute is constitutionally infirm. *Foster v. Zeeko,* 540 F.2d 1310, 1314 (7th Cir. 1976).

In light of the obviously unconstitutional nature of Section 11–8, which permits an official with a pecuniary interest to adjudicate AMI appeals, plaintiff has alleged sufficient facts to rebut the application of qualified immunity to Dunne's appointment. Dunne has not shown that his appointment of the Committee members was not in reckless disregard of plaintiff's constitutional right to a full and fair hearing on her AMI appeal. Dunne's motion to dismiss the complaint insofar as it seeks

**8.** This is particularly true in light of the fact that Dunne previously served on the Committee. Ill.Rev.Stat. ch. 23, § 11–8 (1975); Plaintiff's Brief in Opposition to Defendant George Dunne's Motion to Dismiss, at 6.

monetary damages must be denied.[9] *See Knell v. Bensinger*, 522 F.2d 720 (7th Cir. 1975) (motion to dismiss rarely granted on the basis of qualified immunity).

The doctrine of immunity has no application to injunctive or declaratory relief. *Mitchum v. Foster*, 407 U.S. 225, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972); *see Heimbach v. Village of Lyons*, 597 F.2d 344, 347 (2d Cir. 1979); *Goldy v. Beal*, 429 F.Supp. 640, 646 (M.D.Pa.1976); *Shore v. Howard*, 414 F.Supp. 379, 395 (N.D.Tex.1976). Therefore, Dunne is also retained as a defendant for the purpose of being the recipient of any injunctive relief.

## II. *The Members of the Public Aid Committee Are Not Entitled to Quasi-Judicial Immunity.*

Four of the five defendant members of the Public Aid Committee have filed a motion to dismiss the complaint insofar as it seeks monetary damages. They are Nancy Follett, Ethel Kolerus, James Jesk, and George Glaser. Plaintiff seeks monetary damages, as well as injunctive and declaratory relief, for defendant supervisors' conduct in willful violation of her due process rights to a fair appeal hearing.

In support of her contention, plaintiff quotes statements made by some of the Committee members during the appeal which she argues indicates their preconceived decision and bias. These statements are not contested by the defendants. The defendants, however, argue that they are absolutely immune from liability because of the quasi-judicial function they perform.

The United States Supreme Court recently stated that it is " 'a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him [should] be free to act upon his own convictions, without apprehension of per-

sonal consequences to himself.' " *Stump v. Sparkman*, 435 U.S. 349, 355, 98 S.Ct. 1099, 1104, 55 L.Ed.2d 331 (1978), *quoting Bradley v. Fisher*, 13 Wall. 335, 347, 20 L.Ed. 646 (1872). Similar considerations have led the Supreme Court to extend judicial immunity to administrative or executive officials who perform adjudicatory or prosecutorial functions. *Butz v. Economou*, 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978). *See Imbler v. Pachtman*, 424 U.S. 409 (1976). This quasi-judicial immunity is applied when the activity involved is an "integral part of the judicial process." *Imbler v. Pachtman*, 424 U.S. 409, 430, 96 S.Ct. 984, 995, 47 L.Ed.2d 128 (1976). *See Stump v. Sparkman*, 435 U.S. 349, 362, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978).

The Supreme Court has adopted a pragmatic approach in determining when quasi-judicial immunity is appropriate. This approach was recently employed by the Court in *Butz v. Economou*, 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978). In extending absolute immunity to executive officials who perform adjudicatory or prosecutorial functions, the Court stated that the discretionary functions these executives perform and the safeguards inherent in agency adjudication warranted the application of absolute immunity.

The *Butz* Court identified several factors which separate proceedings deserving of quasi-judicial immunity from less regular administrative proceedings. Among these factors was the fact that the proceedings are adversary in nature and conducted before a trier of fact insulated from political influence. Also, the Court emphasized that the parties are entitled to present evidence and know the findings and conclusions on all the issues. *Butz, supra*, at 514, 98 S.Ct. at 2915. In light of these factors, the Court held that "persons subject to these restraints and performing adjudicatory functions within a federal agency are entitled to

---

**9.** Although this court is amenable to further briefing on Dunne's damage liability for a procedural due process violation, it appears Dunne can be held liable only for nominal damages under *Carey v. Piphus*, 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978); *see Konczak v. Tyrrell*, 603 F.2d 13, Nos. 78–2414, 78–2415, 79–1090, 79–1149 (7th Cir. July 12, 1979).

absolute immunity from damages liability for their judicial acts." [10]

Some of the factors present in *Butz* are present here. For example, the Public Aid Committee is an adjudicatory body, established by state statute, vested with the power to decide AMI appeals. Ill.Rev.Stat. ch. 23, § 11–8 (1977). The members of the Committee are "required, by the legal obligations of [their] position, to exercise discretion." *Scheuer*, 416 U.S. at 240, 94 S.Ct. at 1688. Their function is judicial in nature. Their sole responsibility is to decide appeals for townships denying or terminating aid. The hearing was adversary in nature. Plaintiff was represented by counsel and presented evidence to the Committee for consideration.

Others of the *Butz* factors, however, are not present in AMI appeal hearings. The plaintiff was not granted a hearing before a trier of fact insulated from political influence as *Butz* requires.[11] *Butz*, 438 U.S. at 513, 98 S.Ct. 2894. The defendant members of the Public Aid Committee had a pecuniary interest in denying plaintiff's application for assistance. Because of this pecuniary interest, it cannot be said that an AMI applicant is granted a hearing before a hearing examiner exercising "his independent judgment on the evidence before him." *Butz*, 438 U.S. at 513, 98 S.Ct. at 2914. These factors, which are central to the holding in *Butz* are not present here. Taking plaintiff's allegations to be true, the court finds that the complaint contains sufficient allegations to support a finding that the defendant members of the Public Committee are not entitled to quasi-judicial immunity. Defendants Kolerus, Follett, Jesk, and Glaser's motions to dismiss are denied.

In summary, the motions to dismiss are denied.

**10.** *Butz* was recently applied to a state's Alcoholic Beverage Control Commission vested with authority to determine the issuance of liquor licenses. In *Brown v. DeBruhl*, 468 F.Supp. 513 (D.S.C.1979), the court granted absolute quasi-judicial immunity to members of the Commission. The court emphasized the judicial nature of their duties and the hearing conducted. The hearing was conducted according to state law, and denied the plaintiff's application for a liquor license after "a fair and impartial hearing where both viewpoints were considered." *Brown*, 468 F.Supp. at 519. *See Clark v. State of Washington*, 366 F.2d 678 (9th Cir. 1966) (members of admission or disciplinary committee of Bar Association granted absolute quasi-judicial immunity).

**11.** In fact, the allegations, if true, would demonstrate that there was not only a technical denial of due process, but an intentional denial of a right to a fair hearing. *See* note 7, *supra*.