**Dorothy JONES**

v.

**SINGER CAREER SYSTEMS, James Mingo, Dep. Director, Janet Odegard, Educational and Training Supervisor, Both Individually and as Employees of the Corporation; and A.P. Andrews, Arkansas Employment Security Division, Appeals Referee, Both Individually and as a Governmental Employee.**

No. LR–C–84–145.

United States District Court, E.D. Arkansas, W.D.

April 26, 1984.

Betty Cross, Little Rock, Ark., for plaintiff.

Christopher Heller, Little Rock, Ark., for all defendants except Andrews.

Kay J. Jackson DeMailly, Asst. Atty. Gen., Little Rock, Ark., for A.P. Andrews.

## ORDER

EISELE, Chief Judge.

Pending before the Court is the motion to dismiss filed by separate defendant A.P. Andrews. For the reasons stated below, the motion is granted.

Plaintiff Dorothy Jones, a black female, filed a complaint on February 13, 1984, seeking declaratory, equitable and injunctive relief pursuant to 28 U.S.C. § 1343, and 42 U.S.C. §§ 1981, 1983 and 2000a et seq. In her complaint, Ms. Jones alleges that she was terminated from her position

as a teacher at the Little Rock Job Corps Center due to her race. She has named as defendants various persons who are associated with the Job Corps program.

Ms. Jones has also sued Mr. A.P. Andrews, who is a hearing appeals referee with the Arkansas Employment Security Division. It appears from the pleadings that her claim against Mr. Andrews stems from an appeal that Ms. Jones brought in an attempt to establish entitlement to unemployment compensation benefits. She had purportedly been denied such benefits because of certain "misconduct" attributed to her.[1] Apparently, after a hearing held on June 16, 1983, Mr. Andrews sustained the initial denial of unemployment benefits to Ms. Jones. Ms. Jones contends that in sustaining the denial of benefits, Mr. Andrews "negligently omitted reference to testimony" and gave "no probative value whatsoever" to testimony that allegedly favored Ms. Jones. She concludes that through such actions, Mr. Andrews improperly denied Ms. Jones her "rightful receipt of unemployment benefits which had accrued and to which she was entitled." Although her complaint is unclear as to precisely which provision of law Mr. Andrews' actions have violated, the Court will assume that she claims she is entitled to redress under sections 1981, 1983 and 2000a et seq.

■ On March 12, 1984, Mr. Andrews moved to dismiss pursuant to Rules 12(b)(1) and 12(b)(6). The plaintiff filed no timely response to the motion and has filed no motion for extension of time in which to file said response. Since roughly six weeks have now passed, the Court will assume the plaintiff has waived her right to respond to the motion.[2]

■ Mr. Andrews contends that any claim premised under 42 U.S.C. § 2000e et seq. (Title VII) must be dismissed because the plaintiff's EEOC charge fails to name Mr. Andrews and because the plaintiff was neither an employee of nor an applicant for employment with Mr. Andrews. The Court finds both points well-taken. There is absolutely no indication that Mr. Andrews is an "employer", at least with respect to Ms. Jones, within the meaning of Title VII.[3] Moreover, even if somehow he could be so construed, the plaintiff's EEOC charge omits any reference to Mr. Andrews. The general rule is that a Title VII suit may not be maintained against a party who is not named in the EEOC charge. *See Bratton v. Bethelehem Steel Corp.*, 649 F.2d 658, 666 (9th Cir.1980) (citing 42 U.S.C. § 2000e–5(f)(1)). This rule is subject to several exceptions. For example, the party need not be named in the charge where he shares a "substantial identity" with those actually named in the charge, *see Curran v. Portland School Committee*, 435 F.Supp. 1063, 1074 (D.Me.1977), or where the party can be said to have had adequate notice of the charge and an opportunity to participate in any conciliation proceedings,

---

1. The parties agree that Ms. Jones was terminated for alleged "misconduct" when she left her classroom to have her hair braided by a student in a room across the hall from her classroom. According to defendants, they fired her because she left her classroom unattended. For discussions of "misconduct" under Arkansas Law, see *Willis Johnson Co. v. Daniels*, 269 Ark. 795, 601 S.W.2d 890, 893 (Ct.App.1980); *Parker v. Ramada Inn*, 264 Ark. 472, 572 S.W.2d 409, 411 (1978). *See also Paxton v. Union Nat. Bank*, 688 F.2d 552, 567 n. 21 (8th Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 1772, 76 L.Ed.2d 345 (1983).

2. On April 2, 1984, the Court contacted plaintiff's counsel to ask if the plaintiff intended to file a response to the motion to dismiss. The Court was informed that such a response would

be filed by April 6, 1984. When no such response was filed, the Court again contacted plaintiff's counsel, who said she would file the response by April 13, 1984. When this deadline was also missed, the Court again contacted plaintiff's counsel, who again stated that a response would be filed soon. As of this date, no such response has been filed. The Court therefore finds that plaintiff has waived any response.

3. *Cf. NOW v. Waterfront Commission,* 468 F.Supp. 317, 320 (S.D.N.Y.1979) (state licensing authority not an "employer" within the meaning of Title VII). *See also Stanley v. Indiana Civil Rights Comm'n,* 557 F.Supp. 330, 333 (N.D.Ind. 1983) (finding no authority that "extends Title VII to state agencies which investigate complaints of employment discrimination.").

*see Eggleston v. Chicago Journeymen Plumbers,* 657 F.2d 890, 905–07 (7th Cir. 1981), *cert. denied,* 455 U.S. 1017, 102 S.Ct. 1710, 72 L.Ed.2d 134 (1982). In this case, however, none of the exceptions apply. Consequently, the plaintiff's Title VII claim against Mr. Andrews must be dismissed.

■ Mr. Andrews also asserts that the plaintiff's section 1981 and section 1983 claims should be dismissed for a variety of reasons. Again, the Court must agree. First, there is no allegation that Mr. Andrews intentionally discriminated against the plaintiff on account of her race. Instead, the contention seems to be that he "negligently" omitted or refused to consider certain testimony that would have been favorable to her unemployment benefits appeal. It is clear that in an action premised under section 1981, a plaintiff must prove an intent to discriminate on the part of the defendant. *General Building Contractors v. Pennsylvania,* 458 U.S. 375, 102 S.Ct. 3141, 3150, 73 L.Ed.2d 835 (1982). Moreover, to make out a claim of disparate treatment under section 1983, the plaintiff must also establish evidence of discriminatory intent. Nothing in the plaintiff's complaint suggests that Mr. Andrews possessed such intent.

■ Be that as it may, it appears that the section 1981 and section 1983 damages claims against Mr. Andrews must be dismissed for an even more fundamental reason. Mr. Andrews has been sued for actions undertaken during the performance of his duties as a hearings appeals referee for the Arkansas Employment Security Division. He contends that since any allegation of liability stems from his performance of his official duties, he enjoys absolute immunity. The Court agrees.

In *Bradley v. Fisher,* 80 U.S. (13 Wall.) 335, 20 L.Ed. 646 (1872), the Supreme Court held that judges are absolutely immune from civil suits "for malice or corruption in their actions whilst exercising their judicial function within the general scope of their jurisdiction." *Id.* 80 U.S. at 354. The Court reasoned that such immunity was necessary because if a civil action

could be maintained by virtue of an allegation of error or even malice, judges would lose "that independence without which no judiciary can either be respectable or useful." *Id.* at 347.

More recently, in *Pierson v. Ray,* 386 U.S. 547, 554, 87 S.Ct. 1213, 1217, 18 L.Ed.2d 288 (1967), the Court recognized that state judges, sued on constitutional claims pursuant to section 1983, were also clothed with absolute immunity to the extent that they are acting within the scope of their authority. *See Stump v. Sparkman,* 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978).

Finally, in *Butz v. Economou,* 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978), the Court extended absolute immunity to federal hearing examiners and administrative law judges when they perform adjudicatory functions within a federal agency. In so doing, the Court analogized to the non-administrative judicial setting as a basis for its decision:

> [C]ontroversies sufficiently intense to erupt in litigation are not easily capped by a judicial decree. The loser in one forum will frequently seek another, charging the participants in the first with unconstitutional animus. See *Pierson v. Ray,* 386 U.S., at 554 [87 S.Ct., at 1217]. Absolute immunity is thus necessary to assure that judges, advocates, and witnesses can perform their respective functions without harassment or intimidation.
>
> At the same time, the safeguards built into the judicial process tend to reduce the need for private damages actions as a means of controlling unconstitutional conduct. The insulation of the judge from political influence, the importance of precedent in resolving controversies, the adversary nature of the process, and the correctability of error on appeal are just a few of the many checks on malicious action by judges. * * * Because these features of the judicial process tend to enhance the reliability of information and the impartiality of the decisionmaking process, there is a less-press-

ing need for individual suits to correct constitutional error.

We think that adjudication within a federal administrative agency shares enough of the characteristics of the judicial process that those who participate in such adjudication should also be immune from suits for damages. The conflicts which federal hearing examiners seek to resolve are every bit as fractious as those which come to court. * * *

There can be little doubt that the role of the modern federal hearing examiner or administrative law judge within this framework is "functionally comparable" to that of a judge. His powers are often, if not generally, comparable to those of a trial judge: He may issue subpoenas, rule on proffers of evidence, regulate the course of the hearing, and make or recommend decisions. * * * More importantly, the process of agency adjudication is currently structured so as to assure that the hearing examiner exercises his independent judgment on the evidence before him, free from pressures by the parties or other officials within the agency.

*Id.* at 512–13, 98 S.Ct. at 2913–14 (footnote omitted).

Just as *federal* agency hearing examiners and administrative law judges can claim absolute judicial immunity from damages when carrying out authorized adjudicatory functions, it appears that *state* agency hearing examiners and administrative law judges should enjoy similar insulation from liability when they carry out their adjudicatory acts. Indeed, *Butz* clearly recognized the folly in assuming that state officials should be accorded a lesser degree of immunity (relative to their federal counterparts) simply because they act on behalf of the state, rather than the federal, governments:

[W]e deem it untenable to draw a distinction for purposes of immunity law between suits brought against state officials under § 1983 and suits brought directly under the Constitution against federal officials. * * * To create a system in which the Bill of Rights monitors more closely the conduct of state officials than it does that of federal officials is to stand the constitutional design on its head.

438 U.S. at 504, 98 S.Ct. at 2909.

This Court believes that in hearing appeals of unemployment benefit decisions, Mr. Andrews is carrying out duties that are "functionally comparable" to that of a judge. He has the power to regulate the course of the hearing before him and since he sits as the decisionmaker for the Appeal Tribunal, he may affirm, modify, reverse or remand a decision. *See* Ark.Stat.Ann. § 81–1107(d)(2). It appears also that he has the authority "to administer oaths and affirmations, take depositions, certify to official acts and issue subpoenas...." *See* Ark.Stat.Ann. § 81–1114(h). Moreover, there are "safeguards" built into the system akin to those in the traditional judicial process that minimize the need to provide the basis for a private damages action in order to curb unconstitutional conduct. First, proceedings before the Appeal Tribunal are adversary in nature. Second, additional "safeguards" arise by virtue of the multi-level review process through which a person such as Ms. Jones can seek to overturn allegedly improper conduct by lower officials such as Mr. Andrews. Mr. Andrews' decision *could* have been subject to further administrative review if the plaintiff had exercised her rights to appeal to the Board of Review. *See* Ark.Stat.Ann. § 81–1107(d)(3). Indeed, if she had exercised this option, she could have appealed even further by turning to the Arkansas Court of Appeals for relief. *See* Ark.Stat. Ann. 81–1107(d)(7). The Court must conclude that, considering both the adjudicative nature of the functions performed by Mr. Andrews in his position with the Arkansas Employment Security Division as well as the safeguards against unconstitutional or otherwise improper conduct that are built into the structure of the Division's adjudicatory system, Mr. Andrews is absolutely immune from liability for damages based on actions taken in connection with his duties. *Cf. Stanley v. Indiana Civil Rights Commission,* 557 F.Supp. 330, 334–

35 (N.D.Ind.1983) (Members of Indiana Civil Rights Commission entitled to absolute immunity since they performed functions comparable to those performed by judges); *Brown v. DeBruhl*, 468 F.Supp. 513 (D.S.C. 1979) (Commissioners of South Carolina Beverage Control Commission held absolutely immune from liability under sections 1981 and 1983 for acts deemed judicial in nature).

■ Finally, the Court must determine whether the plaintiff can maintain her section 1983 request for *injunctive* relief against Mr. Andrews. This question appears to have been addressed several months ago by the United States Supreme Court in *Pennhurst State School & Hospital v. Halderman*, — U.S. —, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). In *Pennhurst*, the plaintiff had alleged that conditions at a state-operated institution for the care of the mentally retarded fell short of both federal constitutional standards, as well as standards imposed by the state. The state officials contended that absent consent by the state, the Eleventh Amendment divests the federal courts of any jurisdiction to award injunctive relief against state officials on the basis of state law. The Supreme Court expressly recognized that it had previously drawn a dichotomy between retrospective and prospective relief in *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), therein noting that prospective relief could be ordered against state officials in spite of the Eleventh Amendment for violations of federal law. Such relief was deemed necessary in order to vindicate important federal rights and to hold state officials responsible to "the supreme authority of the United States." *Ex Parte Young*, 209 U.S. 123, 160, 28 S.Ct. 441, 454, 52 L.Ed. 714 (1908). In *Pennhurst*, however, the Court found that such a

> need to reconcile competing interests is wholly absent ... when a plaintiff alleges that a state official has violated state law. In such a case the entire basis for the doctrine of *Young* and *Edelman* disappears. A federal court's grant of relief against state officials on the basis of state law, whether prospective or retroactive does not vindicate the supreme authority of federal law. On the contrary, it is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law. Such a result conflicts directly with the principals of federalism that underlie the Eleventh Amendment. We conclude that *Young* and *Edelman* are inapplicable in a suit against state officials on the basis of state law.

104 S.Ct. at 911.

In the case at bar, the plaintiff seeks an injunction requiring Mr. Andrews "to authorize and approve unemployment compensation benefits denied to plaintiff." The implicit assumption is that she is entitled to such benefits. It is clear that any basis for claiming a right to unemployment benefits emanates from the Employment Security Act, Ark.Stat.Ann. § 81–1101 to 1126, which establishes the grounds under which an unemployed worker may be entitled to unemployment benefits under Arkansas law. Thus, the wellspring of plaintiff's right to the benefits she seeks is state law, not federal law. By requesting this Court to enjoin Mr. Andrews to authorize and approve the awarding of unemployment benefits, the plaintiff is simply asking the Court to force Mr. Andrews to conform his conduct to state law. In the wake of *Pennhurst*, this Court clearly possesses no jurisdiction to order such relief. The plaintiff's request for injunctive relief must therefore be denied.

It is therefore Ordered that the motion to dismiss filed by defendant A.P. Andrews be, and it is hereby, granted.