232 F.Supp.2d 585 (2002)
Victoria HOWARD, Plaintiff,
v.
FOOD LION, INC., Mr. Ray Holt, individually and in his official capacity as Store Manager Store 274; Mr. Eddie Glasco, individually and in his capacity as Store Manager Store 274; Mr. Rodney Jackson, individually and in his capacity as Supervisor; Mr. Mark *586 Dinse, individually and in his capacity as Regional Human Resource Manager; and Mr. John F. Pendergrass, individually and in his capacity as Employment Security Commission/Appeals Referee, Defendants.
No. 1:01-CV-00981.
United States District Court, M.D. North Carolina.
October 23, 2002.
*587 *588 *589 *590 Victoria Howard, Durham, NC, pro se.
Harley Harrell Jones, Edwards Ballard Clark Barrett and Carlson, P.A., Winston-Salem, NC, for Ray Holt, Eddie Glasco, Rodney Jackson, Mark Dinse.
*591 Charles E. Monteith, Jr., Fred R. Gamin, C. Coleman Billingsley, Jr., Employment Sec. Com'n of N.C., Raleigh, NC, for John F. Pendergrass.

MEMORANDUM OPINION
OSTEEN, District Judge.
Plaintiff Victoria Howard, acting pro se, brought this action in Durham County District Court on September 25, 2001. Plaintiff seeks damages and injunctive relief from Food Lion, Inc., several of its executives and managers, and an appeals referee for the Employment Security Commission of North Carolina under 42 U.S.C. § 1983; 42 U.S.C. § 1985; the Federal Tort Claims Act, 28 U.S.C. § 2671 et seq.; and the Labor Management Reporting and Disclosure Act, 29 U.S.C. § 401 et seq. Plaintiff also alleges violations of North Carolina's Employment Security Law, N.C. Gen.Stat. § 96-18(b). Defendants removed to this court on October 25, 2001.
This matter is before the court on Plaintiff's Motion to Remand,[1] Defendants' Motions to Dismiss pursuant to Rule 12 of the Federal Rules of Civil Procedure, and Plaintiff's Motion to Transfer.
For the reasons set forth below, Plaintiff's Motion to Remand will be denied, Defendants' Motions to Dismiss will be granted, and Plaintiff's Motion to Transfer will be dismissed.

I. FACTUAL BACKGROUND
Plaintiff Victoria Howard worked as a cashier and front-end assistant for Defendant Food Lion in Durham, North Carolina. In December 2000, the company terminated her employment. When Plaintiff protested this action under Food Lion's internal grievance procedure, she received no response. Plaintiff next sought unemployment compensation, filing an application for benefits with the North Carolina Employment Security Commission (ESC) on January 7, 2001. Food Lion submitted a response to this application, alleging that Plaintiff had been fired for dishonesty. Because North Carolina law does not award unemployment benefits immediately to workers who have been discharged due to their own "substantial fault," an ESC adjudicator ruled against Plaintiff. Plaintiff asserts that on subsequent applications for employment, her decision to list "ethical reasons" for her termination, a suggestion made by an ESC employee, prevented her from finding another job.
After the ESC denied Plaintiff's application for unemployment benefits, the matter was assigned to John F. Pendergrass, an appeals referee for the agency.[2] Mr. Pendergrass initially ruled against Plaintiff after a hearing on March 8, 2001, disqualifying her from receiving unemployment benefits for a period of nine weeks. When Plaintiff appealed this finding, however, the chairman of the ESC vacated the decision based on a procedural error: Mr. *592 Pendergrass had failed to issue a subpoena for the production of documents as requested by Plaintiff. The record does not indicate whether Plaintiff received benefits for the nine-week period. Plaintiff filed this action on September 1, 2001.

II. MOTION TO REMAND
Plaintiff moves to remand this case to state court on two grounds. First, Plaintiff asserts that removal was improper because of the well-pleaded complaint rule. Second, Plaintiff contends that the claims against Defendant Pendergrass must be remanded because the Eleventh Amendment prohibits federal courts from adjudicating claims against state officials.

A. Standard of Review
Removal of claims is appropriate if the federal court would have had jurisdiction over the original claim. 28 U.S.C. § 1441. Statutory provisions permitting removal must be strictly applied, and federal jurisdiction over such claims should not spill beyond these statutory boundaries. See id.; Freeman v. Bechtel, 936 F.Supp. 320, 323 (M.D.N.C.1996). The burden of demonstrating removal jurisdiction rests with the party seeking to keep the case in federal court, not the party moving for remand. Freeman, 936 F.Supp. at 323.
When presented with a motion to remand, a federal district court must ascertain whether it has subject matter jurisdiction before considering a defendant's motion to dismiss. Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 94-95, 118 S.Ct. 1003, 1012, 140 L.Ed.2d 210 (1998). Federal courts have jurisdiction over claims arising under federal law, a category that includes claims based on a cause of action created by federal statute. 28 U.S.C. § 1331; Merrell Dow Pharmaceuticals, Inc. v. Thompson, 478 U.S. 804, 808, 106 S.Ct. 3229, 3232, 92 L.Ed.2d 650 (1986) (quoting American Well Works Co. v. Layne & Bowler Co., 241 U.S. 257, 260, 36 S.Ct. 585, 586, 60 L.Ed. 987 (1916)). Upon removal, the court in its discretion may assert jurisdiction over claims forming part of the same case or controversy as the federal question claim, or it may remand such claims in which state law predominates. 28 U.S.C. § 1441(c); 28 U.S.C. § 1367(a); United Mine Workers v. Gibbs, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966) (noting that supplemental jurisdiction extends to claims that "derive from a common nucleus of operative fact" as the federal question claim). In making this determination, "a federal court should consider and weigh ... the values of judicial economy, convenience, fairness, and comity." Chicago v. International Coll. of Surgeons, 522 U.S. 156, 173, 118 S.Ct. 523, 534, 139 L.Ed.2d 525 (1997) (quoting Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350, 108 S.Ct. 614, 619, 98 L.Ed.2d 720 (1988)).

B. Well-Pleaded Complaint Rule
The well-pleaded complaint rule mandates that a federal question must appear on the face of the plaintiff's well-pleaded complaint for a claim to arise under federal law for purposes of federal subject matter jurisdiction. Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 63, 107 S.Ct. 1542, 1546, 95 L.Ed.2d 55 (1987); Louisville & Nashville Ry. v. Mottley, 211 U.S. 149, 152, 29 S.Ct. 42, 43, 53 L.Ed. 126 (1908). Here, Plaintiff asserts multiple claims, several of which arise under federal law. The state law claims arise from the same controversy: Plaintiff's termination and subsequent pursuit of unemployment compensation. Judicial economy suggests that they should be adjudicated together. Because the complaint itself raises federal questions central to the dispute, Plaintiff's reliance on the well-pleaded complaint rule is inappropriate. Accordingly, *593 Plaintiff's Motion to Remand the claims against the Food Lion Defendants will be denied.

C. Eleventh Amendment
Plaintiff argues that her claims against Mr. Pendergrass should be remanded because the Eleventh Amendment prevents the court from asserting subject matter jurisdiction over the dispute. Mr. Pendergrass counters that the mere existence of an alternative sovereign immunity defense does not require the court to remand Plaintiff's claims.
Plaintiff sues Mr. Pendergrass as an individual and in his official capacity. A state official may be liable in his individual capacity under § 1983 for acts taken under color of state law, even if those acts are performed within the scope of the official's authority. Hafer v. Melo, 502 U.S. 21, 31, 112 S.Ct. 358, 365, 116 L.Ed.2d 301 (1991). Contrary to Plaintiff's assertion, the Eleventh Amendment "provides no shield for a state official confronted by a claim that he had deprived another of a federal right under the color of state law." Id. at 30, 112 S.Ct. at 364 (quoting Scheuer v. Rhodes, 416 U.S. 232, 237, 94 S.Ct. 1683, 1687, 40 L.Ed.2d 90 (1974)). Without this shield, the court has jurisdiction over Plaintiff's claims against Mr. Pendergrass in his individual capacity. Thus, Plaintiff's Motion to Remand those claims will be denied.
It is well established that a suit lodged against a state official in his official capacity should be treated as an action against the state. Hafer, 502 U.S. at 25, 112 S.Ct. at 361. As interpreted by the United States Supreme Court, the Eleventh Amendment prevents federal courts from asserting jurisdiction over claims for damages against a state filed by a citizen of that state. Edelman v. Jordan, 415 U.S. 651, 662-63, 94 S.Ct. 1347, 1355, 39 L.Ed.2d 662 (1974); Hans v. Louisiana, 134 U.S. 1, 18-19, 10 S.Ct. 504, 508, 33 L.Ed. 842 (1890). This broad immunity extends to suits arising under federal law. See Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 72, 116 S.Ct. 1114, 1131, 134 L.Ed.2d 252 (1996). A state may waive the sovereign immunity defense, however, and consent to suit in federal court. Wisconsin Dep't of Corrs. v. Schacht, 524 U.S. 381, 389, 118 S.Ct. 2047, 2052, 141 L.Ed.2d 364 (1998). A state's voluntary appearance in federal court amounts to waiver of its Eleventh Amendment immunity, see Gunter v. Atlantic Coast Line R. Co., 200 U.S. 273, 284, 26 S.Ct. 252, 256, 50 L.Ed. 477 (1906); Clark v. Barnard, 108 U.S. 436, 447, 2 S.Ct. 878, 888, 27 L.Ed. 780 (1883), and state consent to removal constitutes waiver of that immunity under certain circumstances. Lapides v. Board of Regents of the Univ. Sys. of Georgia, 535 U.S. 613, 122 S.Ct. 1640, 1646, 152 L.Ed.2d 806 (2002).
Plaintiff attempts to assert, on behalf of Mr. Pendergrass, an Eleventh Amendment immunity defense. The decision to invoke sovereign immunity belongs to the state, however, and cannot be made by the opposing party. If a state decides not to assert a sovereign immunity defense, the court can ignore the matter and adjudicate the case. Schacht, 524 U.S. at 389, 118 S.Ct. at 2052. Mr. Pendergrass' counsel urges this court to "retain jurisdiction" and dismiss the case rather than remand it to state court. (Def. Pendergrass' Responsive Mem. Opposing Remand State Ct. at 4.) By removing the case and making this request, Mr. Pendergrass "voluntarily invoked the jurisdiction of the federal court." Lapides, 122 S.Ct. at 1645.
The logic of Lapides suggests that removal here, accompanied by the state's expressed desire for this court to dispose of Plaintiff's claims on non-immunity grounds, constituted a voluntary waiver of *594 Eleventh Amendment immunity.[3] As the unanimous Lapides Court observed:
It would seem anomalous or inconsistent for a State both (1) to invoke federal jurisdiction, thereby contending that the `Judicial power of the United States' extends to the case at hand, and (2) to claim Eleventh Amendment immunity, thereby denying that the `Judicial power of the United States' extends to the case at hand.
535 U.S. at ___, 122 S.Ct. at 1643. For this reason, the Court concluded, "removal is a voluntary invocation of a federal court's jurisdiction sufficient to waive the State's otherwise valid objection to litigation of a matter (here of state law) in a federal forum." Id., 535 U.S. at ___, 122 S.Ct. at 1646.
Here, as in Lapides, Plaintiff sued in state court for alleged violations of state and federal law. Here, as there, the state removed the case to federal court and moved to dismiss for lack of subject matter jurisdiction. In addition, Mr. Pendergrass opposes remand, a position inconsistent with an Eleventh Amendment defense. By removing this case, requesting that the court "retain jurisdiction" and arguing against Plaintiff's effort to raise the Eleventh Amendment, Mr. Pendergrass voluntarily invoked the jurisdiction of this court. Accordingly, removal was proper and Plaintiff's Motion to Remand her claims against Mr. Pendergrass in his official capacity will be denied.

III. MOTION TO DISMISS

A. Mr. Pendergrass
Mr. Pendergrass moves to dismiss on the basis of absolute immunity. Judicial officers enjoyed absolute immunity from suit at common law, and this protection extends to government officials performing quasi-judicial functions. Butz v. Economou, 438 U.S. 478, 512-14, 98 S.Ct. 2894, 2914-15, 57 L.Ed.2d 895 (1978); Bradley v. Fisher, 80 U.S. (13 Wall.) 335, 347-48, 20 L.Ed. 646 (1871). Where it applies, absolute immunity provides a broad shield for public officials, including those accused of malicious conduct. Pierson v. Ray, 386 U.S. 547, 554, 87 S.Ct. 1213, 1218, 18 L.Ed.2d 288 (1967). For this reason, absolute immunity should be found only in exceptional circumstances, where officials have been entrusted "to exercise discretion vigorously and effectively, without apprehension that they will be subjected to burdensome and vexatious litigation." Williams v. Rappeport, 699 F.Supp. 501, 506 (D.Md.1988) (quoting McCray v. Maryland, 456 F.2d 1, 3 (4th Cir.1972)). State judges sued under § 1983 may assert absolute immunity to the extent that their conduct occurred within the scope of their authority. Stump v. Sparkman, 435 U.S. 349, 356, 98 S.Ct. 1099, 1104, 55 L.Ed.2d 331 (1978). Quasi-judicial officers qualify for absolute immunity based on "the functional comparability of their judgments to those of a judge." Butz, 438 U.S. at 512, 98 S.Ct. at 2913 (quoting Imbler v. Pachtman, 424 U.S. 409, 423 n. 20, 96 S.Ct. 984, 991, 47 L.Ed.2d 128 (1976)). The inquiry regarding quasi-judicial immunity "depends not on the title of the officer but on whether the alleged conduct which gives rise to the complaint involved the performance of a ... quasi-judicial function." Pippen v. Scales, 822 F.Supp. 305, 309 (M.D.N.C. 1993) (quoting Hoke v. Board of Med. Exam'rs, 445 F.Supp. 1313, 1314 (W.D.N.C.1978)).
*595 In determining whether quasi-judicial immunity should be available, courts consider three main criteria: (1) whether the official's functions are similar to those of a judge; (2) whether a strong need exists for the official to perform essential functions for the public good without fear of harassment and intimidation; and (3) whether adequate procedural safeguards exist to protect against constitutional deprivations. See Ostrzenski v. Seigel, 177 F.3d 245, 249 (4th Cir.1999); O'Neal v. Mississippi Bd. of Nursing, 113 F.3d 62, 66 (5th Cir.1997). These principles apply not only to administrators in federal agencies, but also to state officials performing quasi-judicial duties. See Butz, 438 U.S. at 504, 98 S.Ct. at 2909 ("[W]e deem it untenable to draw a distinction for purposes of immunity law between suits brought against state officials under § 1983 and suits brought directly under the Constitution against federal officials."); see also Tobin for Governor v. Illinois State Bd. of Elections, 268 F.3d 517, 522 (7th Cir.2001) (concluding that members of the state board of elections qualified for absolute immunity); Jones v. Singer Career Sys., 584 F.Supp. 1253, 1257 (E.D.Ark.1984) (holding that an appeals referee for the Arkansas Employment Security Division enjoyed absolute immunity); Brown v. DeBruhl, 468 F.Supp. 513, 518 (D.S.C.1979) (finding that absolute immunity shielded commissioners of the South Carolina Beverage Control Commission for quasi-judicial acts).
Applying these standards, this court concludes that Mr. Pendergrass enjoys absolute quasi-judicial immunity in his function as an appeals referee for the ESC. First, appeals referees certainly perform adjudicative functions. Pursuant to North Carolina law, appeals referees have the power to issue subpoenas, to schedule and continue hearings, to preside over hearings, and to rule on the admission of evidence. See ESC Reg. 14. Although a hearing need not conform to rigidly formal procedural or evidentiary rules, the presiding appeals referee controls the order of proof, determines the relevance of evidence, and takes "official notice" of "all facts of which judicial notice may be taken." N.C. Gen.Stat. § 96-15(c); ESC Reg. 14.18. The appeals referee's ultimate decision must include conclusions of law and findings of fact based on competent evidence in the record. ESC Reg. 14.25. These obligations bear a sufficient resemblance to judicial duties to satisfy the first prong of the test for quasi-judicial immunity. See Jones, 584 F.Supp. at 1257 (holding that "in hearing appeals of unemployment benefit decisions, [an appeals referee] is carrying out duties that are `functionally comparable' to that of a judge") (quoting Butz, 438 U.S. at 513, 98 S.Ct. at 2914)).
Second, a strong need exists to insulate appeals referees from harassment and intimidation. In making adjudicative decisions between adverse parties, appeals referees necessarily frustrate the ambition of one side or the other. The fact that disappointed parties can seek judicial review suggests that these decisions are sufficiently controversial to produce litigation. Appeals referees must be able to function without fear of harassment by disappointed applicants seeking benefits. Denying immunity to appeals referees would expose them to a constant threat of lawsuits, as illustrated by this case.
Third, appeals referees operate within a web of procedural safeguards that mitigates the need for private damages actions to curb unconstitutional conduct. The decisions of an appeals referee may be appealed to the chairman of the ESC, and parties objecting to the outcome of final ESC proceedings may seek judicial review. See N.C. Gen.Stat. § 96-4(m)-(q). With this procedural safety net in place, plaintiffs *596 may seek redress in ways other than private suits against appeals referees. Indeed, this case shows the effectiveness of existing protections; Mr. Pendergrass' initial decision to deny benefits to Plaintiff was vacated on appeal to the chairman of the ESC.
Satisfied that these three conditions have been met, the court concludes that Mr. Pendergrass is absolutely immune from liability for damages stemming from conduct within the scope of his duties as an appeals referee. This immunity, arising from common law, shields Mr. Pendergrass from damages claims. See Hoke v. Board of Medical Exam'rs, 445 F.Supp. 1313, 1314 (W.D.N.C.1978) (observing that quasi-judicial immunity "is not something peculiar to § 1983 or to any other constitutional, statutory, or common law cause of action"). Therefore, Plaintiff's claims against Mr. Pendergrass will be dismissed.

B. Food Lion Defendants
The Food Lion Defendants move to dismiss for failure to state a claim. When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court must evaluate the complaint in the light most favorable to the plaintiff, taking factual assertions as true. Buser v. Southern Food Serv., Inc., 73 F.Supp.2d 556, 559 (M.D.N.C.1999). The court should dismiss a claim only when "`it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proved in support of his claim.'" Rogers v. Jefferson-Pilot Life Ins. Co., 883 F.2d 324, 325 (4th Cir.1989) (quoting Johnson v. Mueller, 415 F.2d 354, 355 (4th Cir.1969)). In considering a motion to dismiss, a court must be "`especially solicitous of civil rights plaintiffs,'" and this obligation "`must be heightened when a civil rights plaintiff appears pro se.'" Marshburn v. Postmaster Gen., 678 F.Supp. 1182, 1184 (D.Md.1988) (quoting Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir.1978)).

1. 42 U.S.C. § 1983
For a plaintiff to recover under § 1983, she must prove that she has been deprived of a right, privilege, or immunity secured by the Constitution or laws of the United States, and that the relevant conduct was committed by a person acting under the auspices of state authority. Dowe v. Total Action Against Poverty in Roanoke Valley, 145 F.3d 653, 658 (4th Cir.1998). Section 1983 itself does not create substantive rights, but rather provides a method for vindicating federal rights conferred elsewhere. Albright v. Oliver, 510 U.S. 266, 271, 114 S.Ct. 807, 811, 127 L.Ed.2d 114 (1994); Doe v. Broderick, 225 F.3d 440, 447 (4th Cir.2000). The requirement under § 1983 that the defendant act under color of state law is equivalent to the state action requirement of the Fourteenth Amendment. See Rendell-Baker v. Kohn, 457 U.S. 830, 838, 102 S.Ct. 2764, 2769-70, 73 L.Ed.2d 418 (1982). This correspondence means that the under-color-of-state-law element of § 1983 excludes from its reach "merely private conduct, no matter how discriminatory or wrongful." Mentavlos v. Anderson, 249 F.3d 301, 310 (4th Cir.2001) (quoting Blum v. Yaretsky, 457 U.S. 991, 1002, 102 S.Ct. 2777, 2785, 73 L.Ed.2d 534 (1982)). Conduct by a private entity may be viewed as state action only if the "seemingly private behavior `may be fairly treated as that of the State itself.'" Brentwood Acad. v. Tennessee Secondary Sch., 531 U.S. 288, 295, 121 S.Ct. 924, 930, 148 L.Ed.2d 807 (2001) (quoting Jackson v. Metropolitan Edison Co., 419 U.S. 345, 351, 95 S.Ct. 449, 453, 42 L.Ed.2d 477 (1974)).
Here, Plaintiff tries to satisfy § 1983's state action requirement against Defendant Food Lion in two ways. Neither *597 attempt succeeds. First, she asserts that Food Lion receives "substantial federal, state, and local funding." (Compl. at 2 ¶ 2.) Assuming the veracity of this statement, as the court must for purposes of the motion to dismiss, it nevertheless fails to demonstrate state action. The receipt of public funds alone does not constitute state action sufficient to satisfy § 1983. See Rendell-Baker, 457 U.S. at 840, 102 S.Ct. at 2771; Dowe, 145 F.3d at 658-60.
Second, Plaintiff avers a conspiracy between Food Lion and Mr. Pendergrass "to conceal material facts and evidence" pertaining to her unemployment claim.[4] To survive a motion to dismiss this conspiracy claim under § 1983, a plaintiff must allege both a mutual understanding to achieve some unconstitutional action reached by the private and state defendants and some factual assertions suggesting a meeting of the minds. See Tarkowski v. Robert Bartlett Realty Co., 644 F.2d 1204, 1206 (7th Cir.1980). When a complaint contains merely a vague allegation of conspiracy, it cannot withstand a motion to dismiss. See Fries v. Helsper, 146 F.3d 452, 458 (7th Cir.1998); Gooden v. Howard Cty., 954 F.2d 960, 969-70 (4th Cir.1992). Here, Plaintiff's bare allegation of a conspiracy satisfies the first prong of the test, but the complaint fails to plead any facts suggesting that Food Lion and Mr. Pendergrass reached a meeting of the minds.
Section 1983 provides legal redress to those whose constitutional rights have been violated by state or local government actors. Banks v. Jefferson-Smurfit, 176 F.Supp.2d 499, 506 (M.D.N.C. 2001). Because neither Food Lion nor its store managers acted under color of state law, Plaintiff's § 1983 claim against the Food Lion Defendants will be dismissed.

2. Fourteenth Amendment
The Fourteenth Amendment does not protect plaintiffs directly against the acts of private citizens. See, e.g., Civil Rights Cases, 109 U.S. 3, 12-14, 3 S.Ct. 18, 21-22, 27 L.Ed. 835 (1883); see also United States v. Morrison, 529 U.S. 598, 621, 120 S.Ct. 1740, 1756, 146 L.Ed.2d 658 (2000) (reaffirming that the Fourteenth Amendment "erects no shield against merely private conduct, however discriminatory or wrongful") (quoting Shelley v. Kraemer, 334 U.S. 1, 68 S.Ct. 836, 842, 92 L.Ed. 1161 (1948)). Because Defendant Food Lion is not a government actor, its Motion to Dismiss Plaintiff's constitutional claim will be granted.

3. 42 U.S.C. § 1985
To state a claim for relief under 42 U.S.C. § 1985(3), the section of the Civil Rights Act of 1871 most applicable to Plaintiff's allegations, the complaint must allege that the defendant (1) conspired; (2) for the purpose of depriving a person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the law; (3) performed or caused to be performed any act in furtherance of the conspiracy; and (4) this conduct injured the plaintiff's person or property or deprived her of having and exercising any right or privilege of a United States citizen. Griffin v. Breckenridge, 403 U.S. 88, 102-03, 91 S.Ct. 1790, 1798-99, 29 L.Ed.2d 338 (1971). Although the statute "was meant to reach private action," this fact "does not, however, mean that it was intended to apply to all tortious, conspiratorial interferences with the rights of others." Id., 403 U.S. at 101, 91 S.Ct. at 1798. In particular, the statutory language requiring an intent to deprive a *598 plaintiff of equal protection, privileges, or immunities "means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." Id., 403 U.S. at 102, 91 S.Ct. at 1798.
Plaintiff does not allege that any of the Defendants discriminated against her because of her membership in a particular class, suspect or otherwise. The complaint identifies Plaintiff as "a black female citizen" but does not charge that Defendants based their conduct on racial animus. Instead, Plaintiff claims that her termination resulted from "arbitrary practices" constituting "willful and wanton action" by Food Lion. In Griffin, the Supreme Court emphasized that to avoid the "constitutional shoals that would lie in the path of interpreting § 1985(3) as a general federal tort law," courts must require, "as an element of the cause of action, the kind of invidiously discriminatory motivation" that the statute intends to prohibit. Id., 403 U.S. at 102, 91 S.Ct. at 1798. Because Plaintiff's complaint, even when broadly construed, does not allege that such a motive caused her termination or temporary denial of state benefits, the Food Lion Defendants' Motion to Dismiss Plaintiff's § 1985 claim will be granted.

4. Remaining Claims for Damages

a. Federal Tort Claims Act
Plaintiff asserts a claim under the Federal Tort Claims Act, 28 U.S.C. § 2671 et seq. This legislation waives the federal government's sovereign immunity under certain circumstances, permitting plaintiffs to sue the United States as if it were a private citizen. See FDIC v. Meyer, 510 U.S. 471, 477, 114 S.Ct. 996, 1001, 127 L.Ed.2d 308 (1994); Kokotis v. United States Postal Serv., 223 F.3d 275, 278 (4th Cir.2000). The statute does not apply to private corporations, such as Food Lion. Accordingly, the Food Lion Defendants' Motion to Dismiss this claim will be granted.

b. Labor Management Reporting and Disclosure Act
Plaintiff claims she is entitled to relief under 29 U.S.C. § 401(b), a provision of the Labor Management Reporting and Disclosure Act. Although this section is entitled "Protection of Rights of Employees and the Public," the Act of which it is a part addresses the relationship between labor unions and their members. Food Lion's employees do not belong to a labor union, and Plaintiff presents no factual scenario to suggest that this law applies to the present dispute. Therefore, the Food Lion Defendants' Motion to Dismiss this claim will be granted.

c. Defamation and Libel
In the first paragraph of her complaint, Plaintiff purports to submit this action "pursuant to ... Defamation, Libel." Although inartfully pleaded, the complaint appears to allege that Food Lion defamed and libeled Plaintiff by accusing her of dishonesty during the ESC proceedings. Under the statute governing those proceedings, however, "all letters, reports, or other communication ... written, sent, delivered, or made in connection with the requirements of the administration" of an ESC case "shall be absolutely privileged communication" in subsequent civil suits. N.C. Gen.Stat. § 96-4(t)(5). It is well established that such privileged statements made in a judicial or quasi-judicial context do not support a civil action for defamation or libel in North Carolina. Jarman v. Offutt, 239 N.C. 468, 472, 80 S.E.2d 248, 251 (1954); Gibson v. Mutual Life Ins. Co. of New York, 121 N.C.App. 284, 290-91, 465 S.E.2d 56, 60-61 (1996). Accordingly, the Food Lion Defendants' Motion to Dismiss *599 Plaintiff's defamation and libel claims will be granted.

d. North Carolina General Statute § 96-18(b)
In the opening paragraph of the complaint, Plaintiff invokes North Carolina General Statute § 96-18(b). This section subjects to criminal sanction employers who make false statements that prevent an entitled person from receiving unemployment benefits. Because the statute does not create a private right of action, however, the Food Lion Defendants' Motion to Dismiss Plaintiff's claim will be granted.

C. Injunctive Relief
Finally, Plaintiff seeks an injunction against all Defendants to prevent retaliation and other deleterious conduct directed at her "and all other similarly situated employees."
Injunctive relief is an extraordinary remedy that a court may issue in its equitable discretion. Weinberger v. Romero-Barcelo, 456 U.S. 305, 312, 102 S.Ct. 1798, 1803, 72 L.Ed.2d 91 (1982). To qualify for injunctive relief, a plaintiff must establish that she has sustained "irreparable injury, a requirement that cannot be met where there is no showing of any real or immediate threat that the plaintiff will be wronged again." Simmons v. Poe, 47 F.3d 1370, 1382 (4th Cir.1995) (quoting City of Los Angeles v. Lyons, 461 U.S. 95, 101-02, 103 S.Ct. 1660, 1665, 75 L.Ed.2d 675 (1983)). "Past wrongs," moreover, "do not in themselves amount to that real and immediate threat of injury." Simmons, 47 F.3d at 1382 (quoting Lyons, 461 U.S. at 103, 103 S.Ct. at 1666). The Fourth Circuit has described federal injunctive relief in the context of § 1983 as "an extreme remedy." Simmons, 47 F.3d at 1382.
Plaintiff makes no showing of continued or irreparable harm. Plaintiff has no ongoing employment relationship with Defendant Food Lion, and her case before Mr. Pendergrass has concluded. Under these circumstances, the court is unable to discover any facts demonstrating an immediate danger of retaliation or other harm to Plaintiff. Plaintiff's inability to find another job stems from her initial termination by Food Lion and her decision to list "ethical reasons" on subsequent job applications. This grievance derives from a "past wrong" insufficient to demonstrate a real and immediate danger of injury. Because Plaintiff makes no showing of irreparable harm traceable to Defendants' conduct, the court declines to issue an injunction.

IV. CONCLUSION
Considering the federal questions presented in this case and the state's expressed desire for this court to adjudicate the dispute, Plaintiff's Motion to Remand will be denied. Defendant Pendergrass' Motion to Dismiss will be granted on the basis of absolute quasi-judicial immunity. The Food Lion Defendants' Motion to Dismiss for failure to state a claim will be granted. Plaintiff's Motion to Transfer will be dismissed.
A judgment in accordance with this memorandum opinion shall be filed contemporaneously herewith.
NOTES
[1] Because of the court's action regarding Plaintiff's Motion to Remand, Plaintiff's "Motion to Access Remand" [15-1] will be dismissed as moot.
[2] The remaining facts in this paragraph derive from documents attached to Plaintiff's first submission of the Response to Defendants' Motion to Dismiss. The first, single-spaced brief was stricken by order of Judge Eliason pursuant to LR 7.1(a). Plaintiff re-submitted a conforming brief, identical in all respects except for the line spacing, but she did not resubmit the attachments. Mindful of its duty to pro se litigants, the court examined the attachments from the first brief in arriving at its decision. See Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir.1978) ("[T]he Court in considering the defendants' motion to dismiss will not permit technical pleading requirements to defeat the vindication of any constitutional rights which the plaintiff alleges, however inartfully, to have been infringed.").
[3] Because Lapides concerned state law claims, it does not control completely the narrow question of whether a state's consent to removal of federal question claims constitutes a waiver of sovereign immunity. Lapides v. Board of Regents of the Univ. Sys. of Georgia, 535 U.S. 613, 122 S.Ct. 1640, 1643, 152 L.Ed.2d 806 (2002).
[4] The complaint does not specify whether Plaintiff seeks relief for this conspiracy under § 1983 or § 1985. The court addresses both possibilities as part of its duty to construe broadly the claims of pro se plaintiffs.